UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS ROBERT VARGAS,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:22-cv-00555-HBK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY [1]<br><br>(Doc. Nos.  16, 17) |

Nicolas Robert Vargas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 16-17, 19).  For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

## I.    JURISDICTION

Plaintiff filed for supplemental security income on September 20, 2019, alleging a

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 20).

disability onset date of April 28, 2017.  (AR 165-86).  Benefits were denied initially (AR 54-66, 84-88) and upon reconsideration (AR 67-79, 90-95).  A hearing was conducted before an Administrative Law Judge ("ALJ") on March 17, 2021.  (AR 32-53).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On April 14, 2021, the ALJ issued an unfavorable decision (AR 12-31), and on March 3, 2022, the Appeals Council denied review.  (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.     BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 21 years old at the time of the hearing.  (AR 35).  He completed high school and was taking college courses at the time of the hearing.  (*Id*.).  He lives with his parents, his brother, and his grandfather.  (AR 36).  Plaintiff has no work history.  (AR 38).  Plaintiff testified he cannot work full time because he has autism spectrum disorder, it's hard for him to socialize with people, he cannot sit still while working, and he cannot follow instructions.  (AR 39).  He reported he has trouble using public transit because he gets easily distracted and is scared to cross the street.  (AR 44).  Plaintiff reported that he attends college courses in the "Disabled Students Program," and gets accommodations including a note taker, a tutor, and extra time for test taking.  (AR 45-46).  He has a hard time keeping his schedule, needs reminders to attend class, has difficulties talking to the instructor and other students, gets distracted and takes a long time to answer questions, needs reminders when to change his clothes and bathe, and has difficulty concentrating when watching television.  (AR 45-48).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 20, 2019, the application date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, flat feet, autism spectrum disorder, and anxiety. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 416.967(b) except he must be able to alternate sitting or standing positions for up to two minutes, at thirty-minute intervals without going off-task. He is limited to no foot control operation.  He can never climb ladders, ropes, or scaffolds, and no more than occasionally perform other postural maneuvers. He must avoid concentrated exposure to temperature extremes, wetness, humidity, and pulmonary irritants. He must avoid all exposure to dangerous moving machinery, unprotected heights, and commercial driving.  He is limited to only simple, routine, and repetitive tasks requiring only simple decisions, with no fast-paced production requirements and few workplace changes.  He cannot interact with the public and can have only occasional interaction with coworkers and supervisors.

(AR 21).

At step four, the ALJ found that Plaintiff has no past relevant work. (AR 24). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: office helper, marker, and mail clerk. (AR 24-25). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since September 20, 2019, the date the application was filed. (AR 25).

////

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1). Plaintiff identifies the following issues for this Court's review:

1.   Whether the ALJ properly considered Plaintiff's symptom claims; and

2.   Whether the ALJ properly considered the medical opinion of Harry Jameson, M.D. (Doc. No. 16 at 10-22).

## VII.   DISCUSSION

### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22). As to Plaintiff's claimed limitations based on autism and anxiety, the ALJ noted Plaintiff's communication skills were identified as a "weakness," his full-scale IQ was 82, he was "expected to perform academically at a level somewhat lower than same-aged peers," and he was in special education from a young age. (AR 22, 449, 553, 570-71). "Therefore, [the ALJ] limit[ed] the claimant to unskilled work with no fast-paced production requirements and few workplace changes, no interaction with the public, and only occasional interaction with others." (AR 22). The ALJ then goes on to note that Plaintiff's "intellectual disability was described as only 'mild' in degree"; he enjoys playing music and wants to have a part-time job involving music; he was a member of the Boy Scouts of America; he attended "regular high school classes 98% of the time"; one teacher reported Plaintiff "improved" in his ability to maintain his calendar and prioritize tasks; another teacher reported Plaintiff "catches on quickly and does a good job retaining information or at least referring to his notes if needed"; he attended college classes online; and mental status findings were unremarkable. (AR 23, 445, 457, 494-95, 553, 557, 569-70, 577). Plaintiff argues these were not specific, clear, and convincing reasons to discount his symptom claims. (Doc. No. 16 at 14-16). The Court agrees.

First, the ALJ noted "the overall objective medical evidence and other evidence of record does not support [Plaintiff's] alleged loss of functioning." (AR 22). Plaintiff argues the ALJ "does not specifically find what testimony he finds inconsistent with the medical evidence, nor does he explain how the medical evidence specifically undermines [Plaintiff's] testimony." (Doc. No. 16 at 16). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he or she finds not to be credible, and

the evidence that allegedly undermines those statements. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "To ensure that our review of the ALJ's determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, the ALJ offers no explanations for why Plaintiff's testimony that he requires frequent reminders for personal care and to take medication, has a hard time keeping his schedule, has difficulty concentrating, does not leave the house alone, cannot follow instructions, does not handle stress well, has difficulty completing tasks, and does not handle changes in routine well, is undermined by a single description of his intellectual disability at age three as "mild," and a single mental status examination by an examining psychologist that noted constricted affect "that varied consonantly with speech content," adequate abstraction ability, and adequate concentration "for performing simple, mathematical calculations." (AR 22-23, 39, 45-48, 235-36, 239-40, 243-48, 552, 569-70). Thus, to the extent the ALJ discounts Plaintiff's symptom claims because they are uncorroborated by the medical evidence, this reason is not clear, convincing, and supported by substantial evidence. *See also Rollins*, 261 F.3d at 857 (lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims).

Second, the ALJ appears to discount Plaintiff's symptom claims because they are inconsistent with activities. (AR 23). The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ cited evidence that Plaintiff's reports that he enjoyed playing music and is a member of the Boy Scouts of America; Plaintiff was "provided coursework that would serve as prerequisites for college" and was "attending regular high school classes 98% of the time"; his high school teachers reported improvement in management, task prioritization, and retaining information or referring to notes when needed; he took a date to prom; he participated in class discussion of

literature; and he attended college online.  (AR 23, 445, 457, 494-95, 553, 557, 569-70, 577).  As an initial matter, it is unclear how Plaintiff's enjoyment playing music, "membership" in Boy Scouts, and attendance at prom undermine Plaintiff's reported symptom claims regarding needing reminders, task completion, difficulty following instructions, and difficulty handling stress and changes in routine.  In addition, Plaintiff argues that while the ALJ relies heavily on Plaintiff's "education related activities as a valid basis to discount his testimony," the ALJ fails to acknowledge accommodations Plaintiff received in high school, including: getting copies of notes from teachers, assigned "notetakers" for classes, seating away from distractions, clarification of instructions, instructions in written form and check for understanding, extended time for assignments, providing reminders, and taking tests in separate rooms.  (Doc No. 19 at 4 (citing AR 461, 488, 517, 538)).  Support services recommended for Plaintiff in college similarly included a notetaker, extra time and quiet setting to complete tests, audiobooks for his subjects, additional instruction in writing, and use of a calculator.  (AR 567 (also noting Plaintiff meets special education criteria for autism)).  Plaintiff also testified that he needs reminders to attend classes, has a notetaker, and receives extra time for his classes.  (AR 45-48).  Finally, the record indicates that Plaintiff received assistance from independent living services ("ILS") to educate him in safety skills, menu preparation, money management, vocational skills, application for benefits, and assistance with medical appointments.  (*See* AR 612, 620 (noting he needs reminders to keep up with household chores and duties), 627 (noting Plaintiff's goal is to learn to complete household chores independently and without reminders), 629 (noting difficulty staying focused on questions being asked), 638 (working on communication skills)).

The ALJ cited no evidence suggesting that the activities cited in the decision were performed by Plaintiff in a manner transferable to a work setting, particularly about Plaintiff's need for reminders, difficulty following instructions, extra time to complete tasks, or difficulties handling stress, nor did the ALJ describe how the activities identified contradict Plaintiff's reported symptom claims.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Thus, to the extent the ALJ found Plaintiff's activities were inconsistent with her claimed limitations this was not a clear and convincing reason, supported by substantial evidence, to discount her symptom claims.

Based on the foregoing, the Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims, and they must be reconsidered on remand.[2]

**B. Medical Opinions**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

---

[2] Defendant also argues "the RFC finding – limiting [Plaintiff] to simple tasks, simple decisions, no fast-paced production requirements, few workplace changes, no public interaction and only occasional interaction with supervisors and coworkers – was consistent with Plaintiff's testimony that he needed reminders to do tasks and was nervous around people." (Doc. No. 17 at 7). Plaintiff argues in reply that the RFC does not fully accommodate his limitations. (Doc. No. 19 at 1-3). The Court finds it unnecessary to address this argument in light of the need to reconsider Plaintiff's symptom claims and the medical opinion evidence, as discussed *supra*, and reevaluate Plaintiff's RFC on remand.

> her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ failed to provide adequate reasons for discounting the medical opinion of his treating physician for 14 years, Harry Jameson, M.D. (Doc. No. 16 at 8-14). On December 23, 2020, Dr. Jameson completed physical and mental assessments of Plaintiff. As to his physical limitations, Dr. Jameson opined that Plaintiff needs a job that permits shifting positions at will from sitting, standing and walking, and needs to walk every 45 minutes for 5-10 minutes at a time; can sit for one hour at a time before needing to get up; can stand for two hours at a time before needing to sit down or walk around; will need unscheduled breaks 3-5 times a day for 10-15 minutes at a time due to "agitation"; is likely to be off task 25% or more of a

11

1  typical workday; is incapable of even low stress work; and will be absent from work more than
2  four days per month if he working full time. (AR 604-07). As to his mental RFC, Dr. Jameson
3  opined that for 15% or more of an 8-hour workday Plaintiff would be unable to understand and
4  remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without
5  special supervision, make simple-work related decisions, ask simple questions or request
6  assistance, respond appropriately to changes in the work setting, and be aware of normal hazards
7  and take appropriate precautions. (AR 609-10). Dr. Jameson further opined that Plaintiff does
8  not function well in tasks without supervision, would be absent 5 days or more per month as a
9  result of his impairments, and would be unable to complete an 8-hour workday 5 or more days
10 per month as a result of his impairment. (AR 610-11). The ALJ found Dr. Jameson's opinions
11 "fail to persuade." (AR 24).

12      First, as to the supportability factor, the ALJ the found Dr. Jameson "offers little
13 evidentiary support other than broad statements about the claimant's difficulty with concentration
14 or history of special education." (AR 24). Under the new regulations, "the more relevant the
15 objective medical evidence and supporting explanations presented by a medical source are to
16 support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. §
17 404.1520c(c)(1); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may
18 permissibly reject check-off reports that do not contain any explanation of the bases of their
19 conclusion."); *see also Gitchell v. Comm'r of Soc. Sec.*, 2023 WL 1785914, at *15 (E.D. Cal. Feb.
20 6, 2023) (holding ALJ appropriately considered supportability factor by finding opining doctor
21 did not cite to specific objective findings to support his opinions). However, it is well-settled in
22 the Ninth Circuit that when a treating physician's check-box opinion was "based on significant
23 experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to
24 weight that an otherwise unsupported and unexplained check-box form would not merit."
25 *Garrison*, 759 F.3d at 1013.

26      Here, as argued by Plaintiff, the ALJ improperly ignored Dr. Jameson's own treatment
27 notes, which included findings of increased anxiety and irritability on medication, gets distracted
28 easily, "poor ability to administer his own medications regularly," difficulty sustaining focus on

tasks, "requires instructions to be given one at a time and even then needs supervision to be sure he stays on task," and tends to be easily distracted, anxiety in challenging situations. (AR 641, 644, 647). The ALJ may not "cherry pick" aspects of the medical record and focus only on those aspects that fail to support a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Moreover, the ALJ fails to explain how Dr. Jameson's own notation that Plaintiff's autism is "high functioning" "clearly fails to support such extensive limitation." (AR 24); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."). In his treatment notes, Dr. Jameson explicitly notes that Plaintiff is "high functioning but still with limitations," and that he also is treating Plaintiff for anxiety and inattention. (AR 647). The ALJ does not cite, nor does the Court discern, any legal authority or evidence in the record identifying which of the limitations assessed by Dr. Jameson would be incompatible with his own diagnosis of "autistic spectrum disorder, high functioning but still with limitations." (*See* AR 647). Based on the foregoing, the ALJ's supportability finding as to Dr. Jameson's opinions is not supported by substantial evidence.[3]

As to the consistency factor, the ALJ found Dr. Jameson's opinions were not consistent with other evidence of record. (AR 24). In support of this finding, the ALJ cited Plaintiff's online college attendance, and "unremarkable" mental status findings including that "his concentration was adequate for performing simple, mathematical calculations" and he demonstrated adequate abstraction ability. (AR 24, 569-70, 577). However, as discussed in detail *supra*, the ALJ fails to consider that Plaintiff received extensive services from the Disabled Students Program at his college, including, but not limited to, additional time and a quiet setting

---

[3] In considering the supportability factor, the ALJ additionally found "[a]lthough assessing the claimant with substantial limitation in exertional functioning, [the ALJ] fails to cite any physical impairments." (AR 24). Plaintiff does not appear to identify or challenge this reason in her opening brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing). However, as the ALJ considered Dr. Jameson's opinions jointly and found "his opinions fail to persuade," his opinions should be evaluated on remand, along with the other relevant medical evidence.

for tests, a notetaker, and additional instruction because of difficulty expressing himself. (Doc. No. 16 at 13). Moreover, the ALJ entirely failed to consider significant evidence in the record that would tend to support the limitations opined by Dr. Jameson, including ILS program notes indicating Plaintiff needed reminders for basic household chores, needed help completing paperwork, had difficulty staying focused, and needed to work on communication; nor did the ALJ consider the only autism-focused assessment in the record, the Gilliam Autism Rating Scale, that assessed a "very likely probability of" autism spectrum disorder, and concluded Plaintiff met the education eligibility criteria for autism. (AR 562-67, 612-39). Thus, the ALJ's finding that Dr Jameson's opinion was "inconsistent with other evidence of record" is not supported by substantial evidence.

For all of these reasons, the ALJ's rejection of Dr. Jameson's opinions under the new regulations is not supported by substantial evidence, and they must be reconsidered on remand.

**C. Remedy**

Plaintiff argues the Court should remand the case for payment of benefits or further administrative proceedings. (Doc. No. 16 at 16-18). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims and the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations particularly as to Plaintiff's claimed impairment of autism, and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert to include all the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 16) is GRANTED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 17) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:   September 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE